IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY,
A NORTH DAKOTA CORPORATION
D/B/A GRANTS GOOD SAMARITAN
CENTER,

      Plaintiff,

      vs.                                                            No. 1:12-cv-00916 WJ/KBM

JOE MESCALE, DECEASED, BY THE
PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH ESTATE,
RACHEL HIGGINS,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION TO COMPEL ARBITRATION**
**AND**
**PETITION FOR APPOINTMENT OF ARBITRATOR**

THIS MATTER comes before the Court upon Plaintiff's Motion to Compel Arbitration and Petition for Appointment of Arbitrator, filed August 28, 2012 **(Doc. 3)**. Having reviewed the parties' briefs and applicable law, I find that Plaintiff's motion is not well-taken and shall be DENIED.

**BACKGROUND**

In this motion, Plaintiff Evangelical Lutheran Good Samaritan Society ("Good Samaritan") moves the Court to compel arbitration of claims asserted by Defendant Rachel Higgins, as personal representative of the Estate of Joe Mescale, deceased, ("Defendant") in the state court case of *Mescale v. Evangelical Lutheran Good Samaritan Society,* D-202-CV-2012-05703, Second Judicial District Court, State of New Mexico, County of Bernaillio (the "state court action"). The state court action is a wrongful death case by Defendant against Good

Samaritan involving multiple claims (negligence, negligence and negligent misrepresentation) directly related to the care and treatment that Mr. Mescale received at Good Samaritan while he was a resident there, sometime between September 4, 2008 and May 24, 2011, when Mr. Mescale died.

According to the complaint, in 2006, Mr. Mescale's daughter, Louise Long, obtained a Temporary Custody Order for Mr. Mescale from the Family court of the Navajo Nation Judicial District of Crownpoint, New Mexico.  She was also appointed his legal guardian.  In September, 2008, Ms. Long admitted her father as a resident to Good Samaritan.  She signed an Admission Agreement ("Agreement") containing a dispute resolution provision, which allows a resident to elect arbitration.  *See* Doc. 6 (Canaba Aff), Ex. 1.   The Agreement provides that any reference to the Resident (Mr. Mescale) also applies to the Resident's guardian, conservator, or agent/attorney-in-fact.  It also states that it binds "heirs, personal representatives, executors, administrators, and assigns of the Resident." Doc. 6 (Canaba Aff.), Ex. 1 at 1, § 1.   The dispute resolution provision in the Agreement is titled "Resolution of Legal Disputes" (hereinafter "Arbitration Provision") and states that arbitration is "meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims, and all allegations of fraud concerning entering into or canceling this Admissions Agreement. . . ." Doc. 6, Ex. 1 at 12.   The clause also states that the Agreement "shall be governed by and interpreted under the [FAA], 9 U.S.C. Sections 1-16. . . ." *Id*.

At the top of the form, the Arbitration Provision states that the Resident's agreement to arbitrate disputes is not a condition of admission or of continued stay.  *Id*.   Thus, Mr. Mescale and/or his guardian Ms. Long were not obligated to agree to the Arbitration Provision as a condition to Mr. Mescale's admission to, or continued stay at, Good Samaritan.  The Arbitration

2

Provision allows a resident to reject arbitration, and elect civil litigation instead, simply by checking a box at the bottom of the page next to the statement: "No, I do NOT wish to arbitrate disputes." *Id.* Ms. Long did not mark this check box in the Agreement, which is dated September 4, 2008, and indicated by initials that she had reviewed the Arbitration Provision. Doc. 6, Ex. 2. Ms. Long had signed a similar Admission Agreement in November 2006 in a previous admission of Mr. Mescale to Good Samaritan. Again, Ms. Long did not check the box on the arbitration provision, indicating that she wished to arbitrate disputes; and again, she acknowledged that she had reviewed the form by initialing the bottom of the Arbitration Provision.

Plaintiff seeks an Order from this Court ordering the parties to select or appoint an arbitrator pursuant to Section 5 of the Federal Arbitration Act ("FAA"), and ordering Defendant to arbitrate her claims asserted against Good Samaritan in the state court action. Plaintiff also requests a stay of proceedings in this case pending a conclusion of arbitration of these claims, or in the alternative, dismiss the matter without prejudice.

## DISCUSSION

The issues to be addressed by the Court are discrete. Parties agree that the FAA applies and that Ms. Long had the authority to bind Mr. Mescale to the Agreement as his legal guardian. Defendant contends, however, that the arbitration clause at issue cannot be enforced because (1) it names as an arbitrator an entity that no longer conducts arbitrations; and (b) it cannot bind Mr. Mescale's wrongful death estate.

It is undisputed that the National Arbitration Forum ("NAF"), the entity which is referred to in the Arbitration Provision, is no longer available to conduct arbitrations.[1] The Court finds

---

[1] NAF's departure from the arbitration forum is related to inquiries into the NAF's alleged violation of consumer arbitration laws. NAF entered into a consent decree and agreed to stop handling certain consumer claims, which

that the issue related to the unavailability of the NAF is dispositive. For this reason, while Plaintiff offers various arguments to support its position that arbitration should be compelled, these other arguments become moot with the resolution of the NAF issue.

The Federal Arbitration Act ("FAA") mandates arbitration of claims that are subject to a written arbitration agreement and that affect interstate commerce. The parties do not dispute that the Agreement at issue is subject to the FAA. Doc. 8, n.1. There is a presumption in favor of the enforceability of arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983) (noting Congressional declaration of a strong national policy favoring arbitration of disputes); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 23 (2001). Arbitration agreements are generally valid, irrevocable, and enforceable "save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2; *Alcaraz v. Avnet, Inc.,* 933 F.Supp. 1025, 1027 (D.N.M. 1996) (any doubts about what issues can be referred to arbitration should be resolved in favor of arbitration).

## I.  Gateway Questions Must be Decided by Court

Plaintiff contends that the validity and enforceability of the arbitration provision should be delegated to an arbitrator to decide, under the Arbitration Provision language, which states that "[t]he issue of whether a party's claims are subject to arbitration under this Agreement shall be decided by the arbitrator." Ex. 2. Defendant, however, contends that this language refers to the scope of the arbitration, and not the enforceability of the provision itself. Arbitration is a matter of contract. *Bridgestone/Firestone, Inc. v. Local Union No. 998,* 4 F.3d 918, 921 (10th Cir.1993). Interpretation of a contract such as the arbitration agreement at issue is a question of law where the contract's construction does not depend on extrinsic evidence and where the

---

includes claims that are at issue here. *See Meskill v. GGNSC Stillwater Greeley, LLC,* 862 F.Supp.2d 966 (D.Minn. 2012).

language is susceptible of only one reasonable interpretation. *See Stegall v. Little Johnson Associates, Ltd.*, 996 F.2d 1043, 1048 (10th Cir.1993).

In this case, the express language of the clause at issue deals only with "claims" and not with enforceability. *Cmp. Rent-A-Center v. Jackson,* 130 S.Ct. 2772, 2777 (2010) (arbitration provision provided specifically that enforceability would be decided by an arbitrator). It is clear that while the parties agreed to arbitrate what "claims" are subject to arbitration, they did not agree to submit issues of arbitrability to an arbitrator. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920 (1995) (question of who has primary power to decide arbitrability turns on what the parties agreed about that specific matter). Moreover, the determination of which claims are subject to arbitration cannot occur where the validity of the entire Arbitration Provision is challenged.

Thus, the Court rejects Plaintiff's argument that the Court must appoint an arbitrator to determine the issues of whether NAF's unavailability renders the Arbitration Provision unenforceable, and whether the provision is enforceable against the wrongful death estate.

**II.     NAF's Unavailability Renders the Arbitration Provision Unenforceable**

The Arbitration Provision states in relevant part that:

> [a]ny arbitration conducted . . . shall be conducted . . . in accordance with the National Arbitration Forum ("NAF") Code of Procedure for Arbitration. . . The parties understand that arbitration proceedings are not free and that any person requesting arbitration will be required to pay a filing fee to NAF and other expenses. . . If you would like information regarding NAF's arbitration service and its rules and procedures for arbitration, you may contact NAF . . . .

Ex. 2, ¶ C.   The thrust of Plaintiff's argument is that reference to the NAF Code of Procedure is not sufficient because the only mandatory language in the provision is that the Code of Procedure applies. The provision does not name NAF as either the arbitrator or the arbitral forum, and the code does not prohibit a non-"NAF" entity from administering the Code. Plaintiff argues that courts have recognized that when an arbitration clause selects an arbitral

5

forum's rules but does not expressly designate that forum to hear the matter, arbitration may be compelled notwithstanding the forum's unavailability. *See Meskill v. GGNSC Stillwater Greeley, LLC.,* 862 F.Supp.2d 966 (D.Minn.2012).

Here, however, the New Mexico Supreme Court has taken up the issue sufficiently for this Court to resolve the question at hand. In *Rivera v. Am. Gen. Fin. Corp*, 259 P.3d 803 (2011), the New Mexico Supreme Court held that the arbitration provisions in the title loan contract could not be enforced because the involvement of the now-unavailable NAF to arbitrate contract disputes was an integral requirement of the parties' agreement. Rivera's holding cannot be taken to mean that § 5 of the FAA (providing that parties may select a substitute arbitrator) never applies in cases where the designated arbitrator is no longer available. 1259 P.3d at 812 (citing *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1222 (10th Cir. 2000) (§ 5 of the FAA "provides a mechanism for appointment of an arbitrator" unless the NAF was "an integral part of the agreement to arbitrate"). Rather, the analysis focuses on the intent of the transacting parties as evidenced by the plain language of the contract. *Id.*

Based on the unambiguous language in the Arbitration provision, the Court finds that the parties intended for the NAF to be an integral part of the contract, and thus the NAF's unavailability brings that agreement to an end. *See Rivera,* 259 P.3d at 811. In *Rivera,* as in this case, the arbitration provision stated that arbitration "will be conducted pursuant to the Rules of the NAF." The provision in *Rivera* included pre-printed NAF provisions and rules, including default provisions. The provisions named the NAF exclusively throughout, using mandatory language. The Arbitration Provision in the instant case uses mandatory language as well ("shall be conducted . . . in accordance with the [NAF] Code of Procedure for Arbitration."). Like *Rivera*, the provision here references the NAF exclusively, with parties advised that they "will be required to pay a filing fee to NAF and other expenses." While the provision does not include

6

additional pre-printed copies of the NAF rules and procedures (or at least none are provided here as exhibits), parties are told that they can access the NAF's rules and procedures for arbitration either by letter or online.  Thus, Plaintiff's argument that NAF was not integral to the Arbitration Provision because it referenced only NAF's procedural rules cannot stand.  The provision *Rivera* was similar in invoking the NAF's procedural rules, and the New Mexico Supreme Court did not consider that to be dispositive.

The Court sees no need to consider in depth other cases cited by the parties, or to look further, since *Rivera* appears to govern as precedent on this issue.  Further, the Court's decision on the NAF question obviates the need to press on to Plaintiff's other arguments as to whether the wrongful death estate is bound by arbitration, or whether the case should be stayed pending arbitration.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Compel Arbitration and Petition for Appointment of Arbitrator **(Doc. 3)** is hereby DENIED because the unavailability of the NAF renders the Arbitration Provision Unenforceable.

_____
UNITED STATES DISTRICT JUDGE